```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FRANKLIN MUTUAL INSURANCE COMPANY AS SUBROGEE OF LAKISHA WILLIS,<br>    Plaintiff,<br><br>       v.<br><br>BROAN-NUTONE, LLC, JOHN DOE 1- 5 AND ABC CORP. 1-5,<br><br>    Defendants. | CIVIL NO. 10-04845(NLH)(JS)<br><br>OPINION |

Appearances

STEVEN A. KLUXEN
METHFESSEL & WERBEL, PC
3 ETHEL ROAD, SUITE 300
PO BOX 3012
EDISON, NJ 08818-3012
*Attorney for the plaintiff*

CHRISTOPHER R. CARTON
K&L GATES LLP
ONE NEWARK CENTER, 10TH FLOOR
NEWARK, NJ 07102
*Attorney for defendant Broan-Nutone, LLC*

**HILLMAN, District Judge**

Before the Court is defendant's motion for summary judgment. For reasons explained below, defendant's motion will be granted.

**I.    BACKGROUND**

This product liability action arises from a residential fire caused by a ceiling fan. The insured, Lakisha

Willis, was paid by her insurance company, plaintiff Franklin Mutual Insurance Company, for her property loss. As a result of this payment, plaintiff has become subrogated to the rights and causes of action of its insured.

Willis had purchased a ceiling-mounted exhaust fan unit designed and manufactured by defendant Broan-Nutone, LLC. On March 26, 2009, Willis was using the fan at her home when a fire occurred. The fire marshal determined that the "fire originated in the ceiling exhaust fan from an unknown catastrophic failure which ignited the available combustibles."

Plaintiff alleges that defendant's fan caused the fire causing damage to Willis' real and personal property. Plaintiff brings product liability, negligence, and breach of warranty claims against defendant.

## II. JURISDICTION

Plaintiff is a New Jersey corporation with its principal place of business in New Jersey. Defendant is a limited liability company whose members are Nortek, Inc., a Delaware Corporation with its principal place of business in Rhode Island, and Nutone, Inc. a Delaware corporation with its principal place of business in Ohio. Plaintiff states that the amount in controversy exceeds $75,000.00, exclusive of interests

and costs.[1]

### III. DISCUSSION

#### A. Negligence and Breach of Warranty Claims

Defendant seeks dismissal of plaintiff's claims for negligence and breach of warranty because they are subsumed within the New Jersey Products Liability Act (PLA). New Jersey law is clear that the PLA provides one unified, statutorily defined theory of recovery for harm caused by a product. See Calender v. NVR, Inc., No. 10-4277, 2012 WL 4482009, at *3-4 (D.N.J. Sept. 26, 2012) (granting summary judgment to defendant on negligence and implied breach of warranty claims because they were subsumed by the PLA); Gupta v. Asha Enterprises, LLC, 422 N.J.Super. 136, 144-45, 27 A.3d 953 (App.Div. 2011) (affirming dismissal of claims for negligence, violations of the CFA and breach of implied warranty insofar as they were based upon

---

1 In opposition to summary judgment, plaintiff raised for the first time that it could not meet the "amount in controversy" requirement for diversity jurisdiction. The Court issued an Order to Show Cause directing plaintiff to file a detailed affidavit attesting to its knowledge of the factual basis for its initial claim for damages. Plaintiff filed an affidavit affirmatively stating it believed the amount in controversy exceeded the $75,000 jurisdictional threshold at the time of the commencement of this action, and raised no concerns that the required amount was not in controversy at the time. Therefore, the Court found [Mem.& Op. Doc. No. 24] that it has subject matter jurisdiction in this matter.

product defect); Koruba v. Am. Honda Motor Co., 396 N.J.Super. 517, 935 A.2d 787, 795 (2007) (explaining that "the PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for "harm[,]" [including personal injury,] caused by a defective product' or an inadequate warning.") (citation omitted).

Plaintiff does not contest defendant's motion regarding these claims. Accordingly, plaintiff's negligence and breach of warranty claims shall be dismissed.

**B. Plaintiff's Expert's Certification**

Defendant also moves to have the certification of plaintiff's expert, Larry Wharton, stricken on grounds that the certification fails to comply with Fed.R.Civ.P. 56(e) which requires a sworn affidavit.

Rule 56 was amended in 2010 so that a formal affidavit is no longer required. The advisory committee notes for the 2010 amendments state in pertinent part "Subdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1).... A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit."

4

Therefore, a certification, rather than a formal affidavit, is permissible pursuant to Fed.R.Civ.P. 56(c)(4).

However, under the revised Rule, Wharton did not include the words "I certify under penalty of perjury that the foregoing is correct." See 28 U.S.C. § 1746. Section 1746 requires that an unsworn certification be "... in substantially the following form:... 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." Here, Wharton states, "I hereby certify that the foregoing statements made by me are true. I understand that if any of the foregoing statements made by me are willfully false, I am [s]ubject to punishment." Although the Court may consider this statement to be in "substantially" the form required by Section 1746, it technically does not include any statement that Wharton understands that he makes his statements under penalty of perjury. In addition, Section 1746 requires an execution date. Wharton did not date his certification.

Given the lack of proper wording together with the fact that it is not dated, the certification does not conform to the requirements of 28 U.S.C. § 1746. Accordingly, the certification is not in a proper form and, therefore, the Court

5

will not consider it.  See Phillis v. Harrisburg School Dist., 430 Fed.Appx. 118, 122 (3d Cir. 2011) (affirming district court's disregard of nonconforming declaration because "[u]nsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury. Fed.R.Civ.P. 56(c)").[2]

### C. New Jersey Product Liability Act

Although the unsworn certification of plaintiff's expert will not be considered, plaintiff submitted expert reports which will be considered in deciding the motion for summary judgment.  Defendant moves for summary judgment on grounds that plaintiff cannot prove his PLA claims.  Defendant argues that plaintiff has failed to identify or produce any evidence of a particular design, manufacturing, or warning defect.  Plaintiff concedes that it is not raising a failure to warn claim, but appears to allege claims for design defect and manufacturing defect.

Under the New Jersey Product Liability Act (PLA),

---

2 Because the Court rejects Wharton's declaration for failure to conform, the Court does not address defendant's additional argument that the declaration should be disregarded because it is self-serving.

6

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:58C-2.

Three causes of action are established under the PLA, namely, claims for design defect, manufacturing defect, or warnings defect. Roberts v. Rich Foods, Inc., 139 N.J. 365, 375, 654 A.2d 1365 (N.J. 1995); Dziewiecki v. Bakula, 361 N.J.Super. 90, 97-98, 824 A.2d 241 (App.Div. 2003). The standard of liability is that the product "was not reasonably fit, suitable or safe for its intended purpose." Cornett v. Johnson & Johnson, 414 N.J.Super. 365, 998 A.2d 543 (App.Div. 2010).

To prove a defect, a plaintiff must be able to show that: (1) the product was defective; (2) the defect existed when product left the hands of the defendant; and (3) the defect caused the injury to a reasonably foreseeable user.'" McGarvey v. G.I. Joe Septic Service, Inc., 293 N.J.Super. 129, 142, 679

7

A.2d 733 (App.Div. 1996)(citing Jurado v. Western Gear Works, 131 N.J. 375, 385, 619 A.2d 1312 (1993)). "To prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer, a plaintiff may resort to direct evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof." Myrlak v. Port Authority of New York and New Jersey, 157 N.J. 84, 723 A.2d 45, 52 (N.J. 1999) (citing Scanlon v. General Motors Corp., 65 N.J. 582, 591, 326 A.2d 673 (1974); Manieri v. Volkswagenwerk A.G., 151 N.J.Super. 422, 430-31, 376 A.2d 1317 (App.Div. 1977)). A plaintiff may also establish a defect by "negat[ing] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control [of the product]." Id. at 53 (citing Scanlon, 65 N.J. at 593-94).

Under New Jersey product liability law, "the injured plaintiff is not required to prove a specific manufacturer's defect." Id. at 52 (citing Moraca v. Ford Motor Co., 66 N.J. 454, 458, 332 A.2d 599 (1975)). "Proof that a product is not fit for its intended purposes 'requires only proof ... that

8

'something was wrong' with the product.'" Id. (citing Scanlon, 65 N.J. at 591, 326 A.2d 673). However, the "mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." Id.

### 1. Specific Proof of a Product Defect

For a design-defect claim, the plaintiff "must prove under a risk-utility analysis the existence of an alternate design that is both practical and feasible," and "safer" than that used by the manufacturer. Diluzio-Gulino v. Daimler Chrysler Corp., 385 N.J.Super. 434, 438, 897 A.2d 438 (App.Div. 2006) (citing Lewis v. Am. Cyanamid Co., 155 N.J. 544, 571, 715 A.2d 967 (1998)). For a manufacturing defect claim, a plaintiff must be able to show that the manufacturing defect deviated "from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." Myrlak, 723 A.2d at 51 (citing N.J.S.A. 2A:58C-2a).

"[W]here the allegedly defective product involves a complex instrumentality, a plaintiff is required to provide expert testimony." Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J.Super. 320, 331, 845 A.2d 1271 (App.Div. 2004) (citing Rocco v. NJ Transit Rail Operations, 330 N.J.Super. 320, 341,

9

749 A.2d 868 (App.Div. 2000)).  "Expert testimony is necessary to assist the fact finder in understanding 'the mechanical intricacies of the instrumentality' and in excluding other possible causes of the accident."  Id. (citing Jimenez v. GNOC Corp., 286 N.J.Super. 533, 546, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996)).  "Expert testimony in conclusionary terms is insufficient to meet that burden." Diluzio-Gulino, 385 N.J.Super. at 438 (citing Smith v. Keller Ladder Co., 275 N.J.Super. 280, 285-86, 645 A.2d 1269 (App.Div. 1994)).  There is no dispute that expert testimony is required in this case.

Defendant argues that plaintiff has failed to offer an expert opinion articulating any theory of defect.  Defendant proceeds on the assumption that plaintiff is relying on a theory of design defect and argues that plaintiff failed to offer any alternative designs or a cost/utility analysis as required under the PLA.  Defendant also states that plaintiff's expert failed to propose or test an alternative design for the fan.

It is not clear whether plaintiff is relying on a theory of design defect or manufacturing defect.  Assuming plaintiff intends to advance a claim under a design defect theory, such claim must fail.  Plaintiff's expert did not

10

identify a specific design defect, and did not propose an alternative design. See Toms v. J.C. Penney Co., Inc., 304 Fed.Appx. 121, 124 (3d Cir. 2008) (affirming dismissal of design defect claim where plaintiff neither offered evidence of a reasonable alternative design, nor made a showing that the risks involved in wearing the robe outweighed its utility notwithstanding the lack of a reasonable alternative design); Smith v. Keller Ladder Co., 645 A.2d 1269, 1271 (N.J.Super.A.D. 1994) (A plaintiff in a design-defect case is required to show the existence of "a safe and reasonably feasible alternative to [the] defendant's product."). Therefore, plaintiff has not presented any specific evidence of a design defect.

Assuming that plaintiff is advancing a theory of manufacturing defect, such claim must also fail. Under New Jersey law, a plaintiff may demonstrate the existence of a manufacturing defect by three separate means: (1) direct evidence that the defect arose in the hands of the manufacturer; (2) circumstantial evidence which would permit an inference that a dangerous condition existed prior to sale; for instance, "the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance"; or (3) by negating other causes of the failure of

11

the product for which the defendant would not be responsible, in order to create an inference that the defect was attributable to the manufacturer.  See Toms, 304 Fed. Appx. at 125.

Plaintiff has provided no direct evidence that a defect existed when it left the hands of the manufacturer. Plaintiff has not presented any evidence regarding the age of the fan, its prior usage, its durability or operability. Plaintiff also has not negated other causes for the failure of the fan for which the defendant would not be responsible. Although plaintiff has presented evidence that the fire originated in the fan, it has not ruled out other causes for failure of the fan such as faulty repair or poor maintenance.

Plaintiff argues that it can prove a defect because: (1) the ceiling exhaust fan had an internal fault that caused a fire; (2) its expert concluded that there was an "internal fault" in the motor coil; and (3) property owned by plaintiff's insured was damaged by the fire.  Although plaintiff has presented expert testimony, it has not provided sufficient evidence that could sustain its claim of a manufacturing defect. "To demonstrate a manufacturing defect, a plaintiff must prove that the product was not manufactured according to its design specifications."  Toms, 304 Fed.Appx. at 125 (citing Myrlak, 723

A.2d at 52).  Plaintiff has presented no evidence that the fan was not manufactured according to its design specifications. All that plaintiff has shown is that the fan caught fire and that fans do not normally catch fire.  However, "the mere occurrence of an accident is not sufficient to establish that the product was not fit for ordinary purposes."  Scanlon, 326 A.2d at 677.  Thus, plaintiff has not presented any specific evidence of a manufacturing defect.

Alternatively, plaintiff argues that it can rely on the "indeterminate product defect test" to create an inference that the fan was defective.  For the reasons explained below, plaintiff has insufficient proof to meet this test.

### 2. Indeterminate Product Defect Test

If a plaintiff cannot prove a specific defect, then it is permitted to rely on the indeterminate product defect test. This test allows the fact finder to draw an inference that a product is defective where the incident that harmed the plaintiff was (1) of a kind that ordinarily occurs as a result of a product defect; and (2) was not, in the particular case, solely the result of causes other than a product defect existing at the time of sale or distribution.  See Restatement (Third) of Torts: Products Liability § 3 (1997), as adopted by Myrlak, 723

13

A.2d at 55-56.

Defendant argues that the indeterminate product defect test only applies in cases where the product was destroyed thus prohibiting an expert from conducting the necessary testing to determine causation. Defendant states that since the fan was preserved and plaintiff's expert was able to conduct a complete forensic examination of the fan that the indeterminate product defect test is unavailable to plaintiff.

The indeterminate product defect test is mainly applied under circumstances in which the product at issue has been destroyed or not available for testing. See Electric Ins. Co. v. Electrolux North America, Inc., 2011 WL 5825981, at *6 (D.N.J. Sept. 19, 2011) (applying indeterminate product defect test where fire destroyed the product creating uncertainty as to the actual composition of the components at the time of the fire); Jerista v. Murray, 185 N.J. 175, 185, 883 A.2d 350 (N.J. 2005) (permitting indeterminate product defect test/res ipsa loquitur charge since it was more than ten years after the accident that plaintiff retained an expert,[3] and it could not be

---

[3] Plaintiffs' first attorney failed to inform them that their case had been dismissed and plaintiffs then brought a legal malpractice claim.

14

determined that the automatic doors observed were the same ones that had been in place at the supermarket on the day they unexpectedly closed on the plaintiff causing injuries); Great Northern Ins. Co. v. Schwartz, 2011 WL 2304135, at *3 (N.J.Super.A.D. June 1, 2011) (indeterminate product defect test applied where hospital bed caught fire and plaintiff's expert could not identify a specific malfunction or the mode of failure in the electrical components because of the damage caused by the fire and firefighting efforts); Amato v. Federal Express, Inc., 2007 WL 3396499, at *1 (N.J.Super.A.D. Nov. 16, 2007) (indeterminate product defect test considered where mechanic determined that a broken right front control arm was the cause of the front end of a truck inexplicably collapsing while plaintiff was driving, but the control arm was discarded since no one ever requested that it be preserved).

It has, however, also been applied in cases where the product was only partially destroyed. See New Jersey Mfrs. Ins. Group v. Hearth & Home Technologies, 2011 WL 1099002, at *2, *8 (D.N.J. March 22, 2011) (test applied where flames extended beyond fire grill of fireplace and insurance investigator found hole in the fireplace screen and burn patterns on the ceiling above the fireplace area; State Farm Fire & Cas. Co. v. Kaz,

15

Inc., 2008 WL 2122639, at *2-3 (N.J.Super.A.D. May 22, 2008) (indeterminate product defect test applied where fan in bedroom caught fire and plaintiff's expert was able to examine the remains of the fan, but finding plaintiff did not satisfy the second prong of the test); Myrlack, 157 N.J. at 92-93 (where some uncertainty existed whether chair examined by plaintiff's expert was the same chair that was involved in the accident, and where plaintiff's expert was not permitted to disassemble the chair, perform a failure analysis on it, or test any of its internal parts); see also, Snell v. Bostrom Products Co., 2005 WL 2654303, at *1, *5 (N.J.Super.A.D. Oct. 19, 2005) (finding plaintiff failed to meet elements of indeterminate product defect test, although opinion unclear whether the seat was severely damaged or unavailable for inspection).

Thus, a plaintiff may not only rely on the indeterminate product defect test in cases where the product is destroyed or otherwise not available for testing, but also in cases where the product has been partially destroyed. In this case, the fan was partially destroyed by fire. Plaintiff's expert, John P. Oakley Jr., states in his report that the "exhaust fan unit sustained significant internal fire damage." Plaintiff's other expert, Larry Wharton, states in his report

16

that during his site investigation that "remains of the fan remained mounted within the ceiling," that the "plastic blower wheel had been consumed," and that "[c]harred insulation remained on the flexible cord for the motor." These statements demonstrate that the fan was partially destroyed by fire. Under such conditions where the product is partially destroyed, application of the indeterminate product defect test is appropriate.

Finding that the indeterminate product defect test applies, plaintiff must show that the incident that harmed the plaintiff: "(a) was of a kind that ordinarily occurs as a result of a product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Myrlak, 157 N.J. at 104. In support of the first element, plaintiff has presented facts that the Fire Marshall, as well as plaintiff's experts, determined that the fire originated in the fan. There is no contrary evidence to plaintiff's assertion that a fan does not normally catch fire unless there is a defect.

With regard to the second element, plaintiff's expert has opined that the fire "was caused by a failure in the coil of the Jakel motor." He further opines that "the localized melting

17

of aluminum wire within the motor coil was the result of an internal fault and could not have been caused by exposure to heat from a fire... ."  Thus, plaintiff's electrical expert examined and eliminated other electrical components in the area of the ceiling fan.  He ruled out that the fire was caused by an external source such as an attic fire since other components were not damaged in a way that would be consistent with an external fire.

However, while plaintiff has presented evidence to rule out an external fire or other potential ignition sources, plaintiff has not presented any evidence concerning the age or maintenance history of the fan.  Given that the indeterminate product defect test is a circumstantial test, it is incumbent upon the plaintiff to come forward with circumstantial proof.  In Kaz, the court found that the plaintiff presented sufficient proofs by way of certifications to suggest that a defect existed at the time of sale or distribution.  Kaz, 2008 WL 2122639, at *6.  Specifically, the court in Kaz found that plaintiffs' "... certification explained their use of the fan and established that they simply removed the fan from the box, placed it in their child's room, plugged it in and used it for the first time during the summer of 2005. In a subsequent certification, they

18

represented that they neither 'modified, adjusted, maintained or damaged [the fan] in any way.'"  Id.

Here, plaintiff has not presented any facts concerning the maintenance or use of the fan.  There is no evidence as to the exact or even approximate age of the fan, the length the fan had been in use, whether it had any prior owners, how often it was used and under what conditions, whether it was modified in any way, or whether any maintenance or repairs were performed.  See Scanlon, 326 A.2d at 678-79 ("[]the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance are the most important considerations in determining whether an inference is permissible that the defective condition existed prior to sale."); Amato v. Federal Express, Inc., 2007 WL 3396499, at *5-6 (N.J.Super.A.D. Nov. 16, 2007) (finding plaintiff failed to establish that any defect existed when the truck left GMC's control because truck was six years old with 103,000 miles, and because the service records for more than five years after the truck was purchased did not exist); Snell v. Bostrom Products Co., 2005 WL 2654303, at *5 (N.J.Super.A.D. Oct. 19, 2005) (plaintiff could not establish second element of test because he presented no evidence to rule out that the malfunctioning of the

19

seat was the product of wear and tear upon it given its prior use and lack of maintenance).

Thus, plaintiff has not presented sufficient evidence that could show that the incident was not solely the result of causes other than the alleged defect in the fan.  Accordingly, plaintiff cannot meet the elements of the indeterminate product defect test.

### III. **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment shall be granted.

An appropriate Order shall accompany this Opinion.


                                  s/Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

Dated:    June 27, 2014

At Camden, New Jersey

20